UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAWN M. JACKSON<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | No. CV-10-03075-CI<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 17, 20.) Attorney D. James Tree represents Dawn M. Jackson (Plaintiff); Special Assistant United States Attorney Stephanie Lynn F. Kiley represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on January 17, 2007. (Tr. 10; 140.) She alleged disability due to depression and joint pain. (Tr. 145.) Her alleged onset date is November 1, 2006. (Tr. 145.) Plaintiff's claim was denied initially and on

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

reconsideration, she requested a hearing before an administrative law judge (ALJ). (Tr. 53-56; 60-67.) A hearing was held on September 1, 2009, at which Vocational Expert Holly Peterson, M.D., and Plaintiff, who was represented by counsel, testified. (Tr. 28-47.) ALJ Douglas S. Stults presided. (Tr. 23.) The ALJ denied benefits on December 16, 2009, and the Appeals Council denied review. (Tr. 1-3; 10-20.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 48 years old. She had been married twice, and had two grown children and one grandchild. (Tr. 28; 36; 308.) She lived in a basement apartment with one dog. (Tr. 28; 34.) As a child, Plaintiff was sexually abused by her step-fathers. (Tr. 201.) Plaintiff completed the eighth grade and her work history includes working as a home health care provider and cleaning apartments. (Tr. 28-31.) After her mother's death in 2003, Plaintiff became depressed. (Tr. 198; 206.) Plaintiff testified that after her mother died, her life has been much more difficult because her mother provided considerable help to her. (Tr. 31-32; 301.) She has attempted suicide. (Tr. 199; 242.) Plaintiff said she can read some of a newspaper and she can write but her spelling is mostly phonetic. (Tr. 32.) Plaintiff testified that her back hurts all the time, and she has trouble coping with life. (Tr. 33; 38-39.)

**ADMINISTRATIVE DECISION**

ALJ Stults found Plaintiff's date of last insured for DIB purposes was September 30, 2007. (Tr. 12.) At step one, he found Plaintiff had not engaged in substantial gainful activity since November 1, 2006. (Tr. 12.) At step two, he found Plaintiff had severe impairments of "degenerative changes and spondylosis, lumbar spine, with chronic low back pain; back and neck pain and arm numbness, status post March 2009 fall; adjustment disorder with depression; chronic social phobia; schizotypal, obsessive-compulsive and borderline features; and alcohol abuse, in remission." (Tr. 13.) At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (Tr. 15.) In his step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the RFC findings. (Tr. 17.) He found that Plaintiff retained the RFC to perform sedentary work with nonexertional limitations:

> The claimant can occasionally climb ramps and stairs, balance, and stoop; never kneel, crouch, crawl and climb ropes, ladders or scaffolds; can sit for up to 30 minutes at a time before having to stand and stretch at workstation for less than 5 minutes; can understand, remember and carry out simple, routine instructions; cannot work with the general public; cannot work in close proximity to or in conjunction with co-workers; cannot be required to read or write as a part of the job; and would require additional time to learn new work tasks and that such new work tasks would be taught by demonstration.

(Tr. 16.)

ALJ Stults found Plaintiff could not perform her past relevant work. (Tr. 18.) The ALJ found that based upon the VE's testimony,

considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform the requirements of representative occupations such as almond blancher and these jobs exist in significant numbers in the national economy. (Tr. 19.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will

still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff contends the ALJ erred by failing to apply the Grids to find Plaintiff disabled and by improperly weighing the medical opinions. (ECF No. 18 at 13-25.) Defendant contends the ALJ's decision is supported by substantial evidence and free of legal error. (ECF No. 21.)

**DISCUSSION**

**1.   Step Five Finding.**

Plaintiff contends that the ALJ erred by failing to apply Grid Rule 201.17 to Plaintiff to find that she is disabled. Plaintiff argues that Grid Rule 201.17 applies because Plaintiff is limited to less than a full range of sedentary work, is between 45 and 49 years old, is capable of only unskilled work, cannot return to past work, and while she can communicate in English, she cannot read or write as part of any job. (ECF No. 18 at 13-18.) The Defendant responds that the Grid Rule does not apply because Plaintiff is not illiterate. (ECF No. 21 at 15.) In reply, the Plaintiff argues that proof of illiteracy is irrelevant, and because evidence exists that supports ALJ's specific finding — Plaintiff "cannot be required to read or write as a part of a job" — the finding dictates the application of the Grid Rule, and the conclusion that Plaintiff is disabled. (ECF No. 22 at 7.)

In making disability determinations, the Social Security Administration relies primarily on the Dictionary of Occupational Titles for "information about the requirements of work in the national economy." SSR 00-4p. The Social Security Administration

also uses testimony from vocational experts to obtain occupational evidence. *Id.* Although evidence provided by a vocational expert "generally should be consistent" with the Dictionary of Occupational Titles, "[n]either the [ Dictionary of Occupational Titles ] nor the [vocational expert] . . . evidence automatically 'trumps' when there is a conflict." *Id.* Thus, the ALJ first determines whether a conflict exists, and if so, the ALJ then determines whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles.[1]

In this case, the record reveals that the VE's testimony conflicts with DICOT and the VE failed to offer an explanation for the variance. The Plaintiff's RFC explicitly excluded reading and writing: "Plaintiff cannot be required to read or write as a part of the job; and would require additional time to learn new work tasks and that such new work tasks would be taught by demonstration."[2] (Tr. 16.) The VE testified that Plaintiff could

---

[1]*Id.* SSR 00-4p gives examples of several reasonable explanations for deviating from the Dictionary. Among them are that the Dictionary does not provide information about all occupations, information about a particular job not listed in the Dictionary may be available elsewhere, and the general descriptions in the Dictionary may not apply to specific situations.

[2]The record reveals that Plaintiff reported to Roland Doughtery, Ph.D., that she has always had trouble with reading and writing and that she was in special education classes for both subjects. (Tr. 198.) She repeated both the first and sixth grades.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

work as an almond blancher, which is listed at DICOT 521.687-010. Performance of this job requires Language Level 1 language skills,[3] which include:

> Reading: Recognize meaning of 2,500 (two-or three-syllable) words. Read at a rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
> Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names and addresses. Speaking: Speak simple sentences, using normal word order, and present and past tenses.

DICOT, Appendix C, 1991 WL 688702 (G.P.O.).

To accept vocational expert testimony that contradicts DICOT, "the record must contain 'persuasive evidence to support the deviation.'" *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001)(quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Social Security Administration*, 119 F.3d 789, 793 (9th Cir. 1997), as amended (citations omitted).

In this case, the reading/writing limitations in Plaintiff's RFC are at variance with the language levels required by the DICOT job description for almond blancher. Prior to her testimony, the VE indicated that if her opinion varied from the DOT, she would explain

---

(Tr. 198.) She has trouble spelling, and she reported she tested at the sixth grade level. (Tr. 202-03.) Plaintiff told Marie Ho, M.D., that she is "almost illiterate, although she finished the eighth grade. She has difficulty reading and writing." (Tr. 207.)

[3]DICOT 318.687-010; 731.687-034.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

the variance, yet she did not provide an explanation or even acknowledge the conflict between the DICOT and Plaintiff's RFC. (Tr. 40-47.) Accordingly, the vocational expert's testimony, which the ALJ adopted, could not serve as substantial evidence supporting the ALJ's determination at step five that plaintiff could perform the occupation of almond blancher. *Pinto*, 249 F.3d at 846.

The court cannot find this error harmless as Defendant points to no other persuasive evidence in the record which could support the ALJ's determination at step five that Plaintiff was not disabled. The ALJ's step five decision was not supported by substantial evidence, the error was not harmless and, thus, remand is necessary. See, e.g., *Pinto,* 249 F.3d at 846 (remand warranted where ALJ found claimant not disabled at step four based "largely" on vocational expert's testimony that conflicted with DOT, neither ALJ nor vocational expert addressed the deviation, and ALJ otherwise "made very few findings").

**2.  Medical Opinions.**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record*. Andrews*, 53 F.3d

at 1043.

**a.   Cindy Gregory, Crisis Case Manager.**

Plaintiff argues that the ALJ's sole reason for discounting Ms. Gregory's opinion -- "because a bachelor's level therapist is not considered an acceptable medical source"[4] -- is invalid. (ECF No. 18 at 18.) The Defendant responds that Ms. Gregory was not treating Plaintiff at the time she completed the evaluation, and that some of Ms. Gregory's limits were included in the RFC and those that were omitted were contrary to the evidence. (ECF No. 21 at 11-12.) As Plaintiff correctly points out in reply, the court is constrained to review the reasons cited by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)(error to affirm ALJ's credibility decision based on evidence ALJ did not discuss); see also *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)(emphasizing the fundamental rule of administrative law that a reviewing court "must judge the propriety of [administrative] action solely by the grounds invoked by the agency" and stating that if "those grounds are inadequate or improper, the court is powerless to affirm the administrative action").

The record reveals that Ms. Gregory evaluated Plaintiff on May 21, 2009, and provided a report and a letter explaining her findings that included her opinion that Plaintiff's depression and posttraumatic stress disorder were severe enough that Plaintiff was unable to work, but her prognosis was good for returning to work after treatment. (Tr. 301-09.) Plaintiff continued with treatment with Ms. Gregory and other staff members at Central Washington

---

[4](Tr. 18.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

Comprehensive Mental Health.  (Tr. 242-52.)

An ALJ is required to consider all of the evidence available in a claimant's case record, including evidence from medical sources. 42 U.S.C. § 423(d)(5)(B); see also 20 C.F.R. § 404.1527(d). ("Regardless of its source, we will evaluate every medical opinion we receive.")  The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not acceptable medical sources. See 20 C.F.R. § 404.1502 and 416.902. In addition to evidence from the acceptable medical sources, the ALJ is required to review evidence from other sources to establish the severity of a claimant's impairments and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513(d).

An ALJ may discount the opinion of a non-acceptable medical source by providing reasons that are "germane" to that source. Cf. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities.  *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).  In this case, the ALJ dismissed Ms. Gregory's opinion for the sole stated reason that she was a non-accepted medical source.  This was error. Because the ALJ made a residual functional capacity determination at odds with Ms. Gregory's lay opinion, it was not harmless error to fail to give germane reasons to reject her opinion. See *Stout*, 454 F.3d at 1056. On remand, the ALJ should revisit the weight assigned to Ms. Gregory's opinion.

**b.   Crystal Coffey, Pharm.D.**

Plaintiff contends that the ALJ erred by rejecting the opinions

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

of Crystal Coffey, Pharm.D., set forth in the Mental Residual Functional Capacity Assessment, dated August 25, 2009. Plaintiff argues that the opinions of Ms. Coffey should not have been dismissed because she has a doctor's degree, is authorized to prescribe medications and was on the staff of Central Washington Comprehensive Mental Health. (ECF No. 18 at 20-21.) The Defendant responds that the record does not establish that Ms. Coffey actually examined Plaintiff, and that Ms. Coffey's degree limits her to medication management. (ECF No. 21 at 12-13.)

The ALJ rejected Ms. Coffey's opinion because "she is a Doctor of Pharmacology and is [an] expert in pharmaceuticals, not mental impairments." (Tr. 18.) The Mental Residual Functional Capacity Assessment completed by Ms. Coffey provided opinions related to Plaintiff's functioning in understanding and memory, sustained concentration and persistence, social interactions, and adaption. (Tr. 317-19.) The record reflects that Crystal Coffey was assigned to work with Plaintiff at Central Washington Comprehensive Mental Health as part of Plaintiff's treatment team. (Tr. 243.) She was tasked with psychiatric evaluation and recommending medication management. (Tr. 243.) No additional records, other than the Assessment, indicate that Ms. Coffey treated or examined Plaintiff.

Contrary to Plaintiff's assertions, as a pharmacist, Ms. Coffey is not an "acceptable medical source" as that term is used in the Social Security regulations. See 20 C.F.R. 416.913(a). Physician's assistants, nurse practitioners, and chiropractors and similar providers are medical professionals, but they are not considered "acceptable medical sources," under the Social Security regulations.

20 C.F.R. § 404.1513(d)(1), 416.913(d)(1). Rather, these medical professionals are considered "other sources." *Id.* As stated *supra,* the ALJ may discount the opinion of a non-acceptable medical source by providing reasons that are "germane" to that source. *Cf. Bayliss,* 427 F.3d at 1218. In this case, the ALJ provided a germane reason for giving little weight to Ms. Coffey's opinions about Plaintiff's mental health functioning - the mental health evaluation of Plaintiff was outside Ms. Coffey's expertise in medication management.

### c. Tanvir Ahmad, M.D.

Plaintiff argues that the ALJ erred by stating he gave "great weight" to Dr. Ahmad's assessment related to Plaintiff's orthopedic complaints, but the ALJ failed to include Dr. Ahmad's assessed handling limitations in Plaintiff's RFC. (ECF No. 18 at 21-22.) The Defendant responds that the record does not support a finding of handling limitations, this finding was inconsistent with his other findings, and therefore rejecting this portion of Dr. Ahmad's assessment was reasonable. (ECF No. 21 at 13.)

Dr. Ahmad's May 14, 2009, assessment indicated in part that Plaintiff's back and neck pain significantly interfered with her ability to lift, handle, and carry, and he recommended Plaintiff avoid handling, pulling and pushing. (Tr. 294.) However, the ALJ's RFC failed to include handling limitations. (Tr. 16.) The VE testified that Plaintiff could perform the work of almond blancher, which includes frequent – defined as "1/3 to 2/3 of the time" – reaching, handling, fingering, lifting, carrying, pushing, pulling and otherwise moving objects. DICOT 521.687.010.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

The hypothetical the ALJ posed to the VE did not include handling limitations. (Tr. 41.) A hypothetical posed to a VE must include all of the claimant's functional limitations supported by the record. *Thomas v. Barnhart,* 278 F.3d 947, 956 (9th Cir. 2002). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. An ALJ may rely on vocational expert testimony given in response to a hypothetical question which contained all of the limitations that the ALJ found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217–18. A VE's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

In this case, the ALJ indicated that with regard to the Plaintiff's orthopedic complaints, he gave "great weight" to the assessment of Dr. Ahmad, and that based upon Dr. Ahmad's opinion, Plaintiff is restricted to sedentary work. (Tr. 18.) The ALJ provides no explanation for his failure to include Dr. Ahmad's handling restrictions in the RFC. On remand, the ALJ will review Dr. Ahmad's assessment and clarify his ruling on his adoption of Dr. Ahmad's opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial

evidence and is based on legal error. Remand for further administrative action consistent with this memorandum and order is necessary.[5] Accordingly,

**IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment **(ECF No. 17)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2.  Defendant's Motion for Summary Judgment **(ECF No. 20)** is **DENIED.**

3.  An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **Plaintiff** and the file shall be **CLOSED**.

DATED April 9, 2012.

                    S/ CYNTHIA IMBROGNO
              UNITED STATES MAGISTRATE JUDGE

---

[5]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Immigration & Naturalization Service v. Ventura*, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).